Good morning. Matthew Hunter for the United States. May I reserve two minutes for a moment? You may. The question in this case is what is a grenade, and specifically what is an explosive grenade? The fundamental error of the district court was that it created a requirement absent from the statute that to be an explosive armed military grenade it has to work. That conclusion is wrong. An explosive grenade is a type of grenade even if it doesn't work as intended. The destructive device category... Is the government arguing for results here that is broader than the issue we actually need to reach? In the motion to dismiss, the defendant admitted to a large number of facts, including that these were grenade hulls, that they had the same explosive in them that the military uses in the same quantities, and that under certain conditions they could well be exploded. Why can't we simply take that statement of facts and decide this issue of law based on that? I think the court could take the... Well, you didn't start that way. Yes, Your Honor. I think the government's position is that given those facts that the court just outlined, that these are military grenades that contain the explosive charge and could explode, that these are military grenades that are an explosive grenade under the NFA. Can you work through why? Because since they don't work, they were designed not to work. Yes, Your Honor. You tell me, what is the government's view as to whether the fact that they fused, that it was set up so that it could not work. Am I right about that? Your Honor, the grenades were manufactured indisputably to be military fragmentation grenades. Correct. And then to ensure that the undercover operation would be safer, the working fuses were removed and... Non-working fuses were put in. They were mechanically and otherwise visually identical. So in that sense, it was designed not to work. In one sense, yes, Your Honor, but the way design is considered for purposes of the NFA. The question is, has the fundamental character of this device been changed? So, for example, if you were to remove, and we see the cases where all the explosive material has been removed from the grenade. If the explosive charge is removed from the grenade, the essential character of the grenade is different. The harm that the NFA is targeted at in including an explosive grenade, in particular in this case a fragmentation grenade, is to prevent explosion by fragmentation. If you remove the explosive charge, it cannot fragment. Take it outside of a grenade. It's a homemade explosive device. Okay, so we're not in the grenade version of what an explosive device is. We're in that catch-all provision. Yes, that's right. Okay. And I guess it's a pressure cooker. I have an explosive in it. But I did the same thing the government did in a movie or something. So I designed it from the get-go with a non-working fuse so it cannot explode in that way. But it's got the explosive device. It's got component parts that otherwise would make it a bomb. Is that covered? Your Honor, that is a different question here. I know it's a different question. But in there I would say there are cases cited in my brief where that is precisely what the defendant claims to have done. No, no, no. Not by accident that it doesn't work. Designed to not work. Yes, Your Honor. In there the cases are uniform, that the intent behind the design doesn't matter. You look at the nature of the device. And there even if either because the defendant didn't want it. This is the Sheehan case. The defendant claimed he didn't want the bomb to explode. He intentionally made the detonator not work. And there the court said the defendant's intent doesn't matter to the issue of design. So what does matter? So there you would look at the device. So here a destructive device. Is it a weapon designed to be a weapon? And is it explosive? And so here we have a fragmentary grenade. A fragmentary hull that is designed to explode and fragment and kill people. And it's initiated by explosion. And here it is charged with. It has a 6.5 ounce composition being explosive. It's capable of exploding. Removing the fuse doesn't change its fundamental character. And this definition has the advantage of being consistent with the way that the military uses the term. So in documents provided by the defendant in their briefing on page 876 of the appendix, the defendant attached a naval contract that lists line items subject to the contract. And separate distinct line items, number one, was an M67 grenade. A separate line item, number two, was an M213 fuse. So apparently even the Navy would consider this grenade without a fuse at all to be a grenade. Can I ask you a question? Yes. Just a technical question. Taking the fuse out or putting it back in doesn't require any particular skill, I guess. Anybody could, with minimal knowledge, if it had a fuse, just plug the fuse back in. That's correct, Your Honor, which is different than the composition being explosive, which is a molded plastic explosive. And if you had found a fuse when the search was done of the defendant's house, he would have had everything necessary to make this fully functional. That's correct. A fuse, or he could have improvised it under other circumstances. So I assume, I'm going to ask this sister counsel, but if they had that fuse, and now let me phrase the question differently. Let's assume there were many grenades that they sold to this fellow. All except one had no fuse. That would clearly be enough for your case if one of those 40 had a fuse. Yes, Your Honor. So the question really is, is the lack of a fuse here anything other than a technical issue that anybody could have done? Put it in. Well, yes, Your Honor. The mechanics of putting in a fuse or another detonator is very simple. The fuse is designed to be removed, and the composition is molded so that it can come in and out very easily. Is the key, then, to the government's position that intent of the designer doesn't matter? Yes, Your Honor. Because if the intent of the designer mattered, then there might be a problem with the government's position. Is that right? Potentially, Your Honor. If that's what designers do. What's the best authority? Because I understand the logic of saying that if I intended to make a grenade and I made it poorly, that that doesn't save it from being an explosive grenade. Because it seems, practically speaking. If the government has designed it not to be explosive, even though it still retains the capacity to be in the sense that they've altered it in some way here with the fuse, you're saying that that doesn't matter because all of the aspects that make it explosive are retained. So what's the best authority that I can look to to conclude that it doesn't matter? Notwithstanding the statute's reference to design. Yes, Your Honor. And having run out of time, I'll quickly say, you know, I think there's analogous firearm cases that deal with this design issue. U.S. v. Rivera's a Second Circuit case that says explicitly whether the firearm has been rendered inoffensively on purpose or by accident is still designed to explode looking at the nature of the device. And in the destructive device cases you can look to. May I? I didn't understand your question, your response to Judge Barron's question. I understand you now to be arguing that intent simply is irrelevant, that the question is the design and whether the design fits the definition of explosive grenade. So which are you arguing, intent does matter or that it's irrelevant? The argument, Your Honor, is that this is an explosive grenade because the characteristics of the device, regardless of the intent behind its assembly, the essential character of this is still a military-grade weapon. And with regard to design, which as structured in the statute is an affirmative defense, the cases are likewise clear that, again, you're looking at the characteristics of the device. So where a defendant may have intended to create a device or claim to, the courts have said, and this is in Posnerjack and Hammond and Sheehan, intent isn't the inquiry there. Could you have solved your problem simply by having transferred to him the grenade and the fuse separately? And you would have had, since you arrested him shortly thereafter you made the transfer, wouldn't that have solved your problem? Well, Your Honor, that theoretically could. If we were talking about trying to think of a combination of parts. Because you argue in your brief that you don't want to put this dangerous instrumentality out there, but if you had separated the fuse, which you told me earlier plugs back in from the grenade, then when you transferred it, it would not have been readily explodable. And would that have solved your problem? The policy concern there, the safety concern there, Your Honor, is in an undercover operation, you're providing a defendant now a working fuse with an explosive grenade. And that he could, because it's so easy to swap in and out, if things go wrong, if he gets away before the van is able to pick him up, now you've given a dangerous person, a dangerous target, a fully operational explosive grenade. I know you're over your time, but I am positive by the government's practice in this regard. If it's that easy to swap them in and out, what is the government doing giving the grenade to the person with the fuse that can easily be swapped out? It was an undercover sting operation. It ran risks. That's a pretty big risk, are you talking about a poison gas grenade? Which is why, Your Honor, the government, given the state of the case law, is trying to take every precaution it legally can to conduct the operation in such a way that will still support criminal charges. Because you could have charged with attempt if it was a truly fake grenade. There's no attempt to this statute because it's under Title 26, Your Honor. You cannot bring an attempt? You cannot bring an attempt. You may want to talk to Congress about that. It would be safer for everybody. Yes, Your Honor, but I do think Congress structured the statute so that we do not need to provide a fully functional grenade so long as it contains its explosive charge. You have two minutes left. We'll hear from your opponent, Ms. Dean. May it please the Court, I'm Penny Dean and I represent Daniel Musso. And I, too, would like to reserve two minutes of time, if I may. You may. Thank you. I think it's clear as a bell to me, and I think it was clear as a bell to Congress in 1968 when GCA 68 was passed, that a grenade was a grenade was a grenade. And all of the components were necessary. We didn't have terms today like we do now on Amazon where people use grenade for this and grenade for that. Everybody knew a flying grenade. It was a grenade. It may be a phosphorus. But the bottom line is, it's not an explosive grenade if it can't explode. It can't be. No, but this could easily explode. You admitted that if you substituted another type of fuse, it would explode. There are also some admissions that under other circumstances, using other detonation devices or sometimes dropping it under certain conditions, that it would explode. That is the record that comes to us. I respectfully say that I, you know, there's two sides of it, if you will. You've got your motion to dismiss right in front of me with the admissions you made as to what the facts are and on which your motion to dismiss relied. You are stuck with that. And I understand that, but if you notice that I corrected in my brief. You can't correct in the court of appeals. You can't change positions. If you admitted to certain facts in the district court, you are bound by those admissions, especially when you put them in your motion to dismiss. Right. Yeah, I agree with that to a certain thing, but ours was a caveat because we hadn't had an opportunity to examine the grenades at the time that motion was filed. And so we were waiting for a time to examine them. But I don't think it matters for this purpose here. Okay. Why not? And here's why. Even if we can see that there's 6.5 ounces of Comp B in those grenades, we still should win. Number one, Comp B is stable. If it wasn't stable, the government wouldn't use it. They got the choice of the world. Comp B is as far as explosives go. I like what people say when you drop it in the sea. I'm sorry, you were going to make a legal argument. You're stuck with the facts you admitted to. Right. That's what I was saying. To whatever legal argument you have. Yes, Your Honor. The legal argument I was making, though, is that it in and of itself isn't dangerous, and we don't agree that anybody can cob together a fuse that will work in an M67. All right. You know, the design question is normally treated as an affirmative defense. And as I understand it in the district court, you didn't even argue the design issue. You do in your appellate briefing seem to get into that topic. But you argued in the district court that a grenade with all of these characteristics was not an explosive grenade. Yes, Your Honor. Correct. All right. So why isn't it an explosive grenade? Because it doesn't contain all the characteristics that make a grenade a grenade. When GCA 68 was passed, they could have been very explicit, as they did in parts of firearms, to define what components consist of it. They didn't do so because everyone knows what a grenade was. A grenade contains a fuse. A grenade contains the components that this has. These do not contain fuses. They contain something that's inert. They're not broken fuses. There's nothing broken about those fuses. They are inert. They presumably work the way they were designed. And so in this particular case, the government absolutely could have included real fuses with it, beside it, or whatever. They made a policy decision not to do it. But if you look at the case law that we've cited, they're saying when all of the components that make it work, that make it go boom, aren't there, it's not a grenade. Well, those are cases where the missing component is the explosive. There are some cases where the fuses were missing. What's that case? If you give me just a second, I believe there's two cases where there was a fuse missing, sir. Osana, O-S-U-N-A, they had inert grenades. And that was cited on... Yeah, but there's no definition given to what inert meant as to those grenades, whether it was a lack of explosives, a lack of fuses. The record is brought to that. You're right. What's the other case? I'm pulling it up. I'm getting... I'm sorry, I'm not remembering it. Let me see if I can find it anyway. Yes, sir. You just described Osana as a case in which there was no fuse, but it turns out it's not a case in which there was still a fuse. It says it's an inert grenade, so it's not specific there. Okay, so do you have a case in which there is a conclusion that it's not a grenade because it does not have a fuse? No, I believe an inert fuse. Yeah, I got it. No, sir, I believe the fuse was inert in the other case. Do you dispute the government's citation to, I think it's four or five circuit cases, including a Second Circuit case, that basically reject the argument you're making that if there is a missing component, that takes it out of the category of a disruptive device? I think they do dispute it, and here is why. Because the cases are distinguishable? There's two things. A couple, three of the cases the government cited weren't for publication, so I, of course, always distinguish those when cases are not... Quite correctly. ...for publication. At least that's the way I read them in the label that I saw. And so, yes, I do. Because just because one court says it doesn't make it so. Courts have made mistakes before. And so when we're talking about these cases, a grenade, again, in GCA 68, everyone knew what a grenade was. They didn't break it down into... Just so I understand, your argument would seem to be equally true for a poison gas grenade, right? Yes. Okay, so am I wrong that the district court was focused on the word explosive rather than grenade? I believe they were focused on explosive. But did you argue below to focus on grenade rather than explosive, or did you argue below to focus on explosive rather than grenade? I argued based on grenade, just to term itself, and the court brought in because of the government's use of explosive repeatedly. Then the trial court used explosive. So you're not making any argument that if it is a grenade, it's not an explosive grenade? Yes, she is. I am. As much as I can, like I said, I didn't at the time because we had not examined them when I filed that, so I'm not trying to bring that in now. But if you're asking would I, yes, and I pointed it out in my brief that at the time... But just on a point about the stable compound. Yes, please. Since your argument is that it's not a grenade, it wouldn't matter what kind of explosive was in it. It still wouldn't be a grenade so long as the fuse doesn't work. That's exactly correct, Justice, because it doesn't do what... Yeah, got it. It's totally for it. Yes. Okay, you have two minutes after he gets his two minutes. Yes, Justice. Very, very briefly, Your Honor. The fundamental point here is that this is, as Defense Counsel said, everyone knows what a grenade is, and Congress here was looking at regulating military grenades, deadly military grenades. And the question is, is this, even without a fuse, still a military grenade? And as I discussed in my initial argument, it is because it still has its essential characteristics. What if, rather than lacking a fuse, it had a real fuse, but the explosive that they put into the grenade in order to make it safe for this kind of transaction was inert and could not explode even though it had a real fuse? Would you be making the same argument? If the explosive charge were missing, Your Honor? No, it's there, but it was inert. The materials? The material that was used would not have... What would that composition be? Concrete. Baking powder. In that case, Your Honor, I think that's where there's a line-drawing question here, right? Correct. And I don't think the court needs to draw a hard line for this case, but if we had to, the government would draw the line at the explosive charge, because there, that's where the essential character, the harm of the grenade, is no longer possible once you remove the charge capable of detonating and fragmenting the grenade. Then you'd be focused on the word explosive. Right. Not grenade. You would still say, was it, or am I wrong on that? No, no, exactly, Your Honor. It is still... But you would see the problem then that starts to happen for the government is then, suppose it's now empty entirely. Yes. Is it a grenade? It's not an explosive grenade. That's not my question. I think... You're focusing on whether it's a grenade, the word grenade, and you happen to have an explosive in it. So, if it is a grenade, because there's an explosive in it, you can say it's an explosive grenade. Judge Stalvin asks you, well, suppose we don't have an explosive in it. What then? Then you say, well, no, I would assume that's because you want to say it's still a grenade, but it's not an explosive grenade, because there's no explosive in it. But then you run into the cases in which the empty hull is treated not as a grenade. So what do we do about that? In those cases, Your Honor, the conclusion of the court is that's not a destructive device. The statute requires it to be an explosive, incendiary, or poison gas grenade. It's not enough for it to be a grenade. A training grenade is not going to be a destructive device. I see, so those cases aren't holdings that it's not a grenade. Those are cases that it's holding that it's not a destructive device. The ultimate conclusion is it's not a destructive device. I think your basic argument comes back to what you said in the beginning. All you have to do is plug in the fuse, it's a fully operational grenade. Yes, Your Honor. The other things which we've discussed, it would not be fully operational without the fuse. But aren't you sort of in trouble because there's no evidence that he had access to a fuse or that there was any fuse available to him? You didn't find one when you searched his house. There's no evidence in the record that he could have readily acquired a fuse. So doesn't that make it a non-explosive grenade, not a grenade? The answer to that is no, Your Honor, because the question is not, this is not a homemade device or an improvised device. This is a military grenade which is the core of what the statute is getting at. And the essential characteristic of a fragmentation grenade is that it is a weapon that's capable of exploding, which this is. But let's assume I can't go down to the, I get these things from you and I realize when I bring them home they sold them to me without a fuse. Is there any way that I as a civilian can go to the hardware store and buy a fuse? There's no evidence in this record that you could make this an operational grenade. Your Honor, on the record as Judge Lynch pointed out, there is evidence that as received by the defendant, these are capable of exploding by a number of means. Theoretically with a hammer, I suppose. It might blow your hand off. And that's the core question. Is this a weapon capable of exploding? That's the essential characteristics that make it an explosive grenade. And here, again, it's a military munition. I cited Title 10 in my brief. And also the ATF has guidance with regard to what you need to register when you're dealing with a dummy grenade. And there it says the grenade needs to be unloaded and bored out so that it can't be used as a component in a destructive device in order to avoid registration. All right. Your time is up. I think Judge Stahl has hit the point on the head here, the nail on the head squarely, is that they're saying, well, he can just go get a fuse. That's just not going to happen. This is totally different than the firearm cases where when a firearm doesn't work, it's still a firearm. Because anybody can buy firearm parts. It's perfectly legal for a convicted felon to buy firearm parts every day of the week. And they can buy them from tens of thousands of manufacturers. And most of them are simple enough that a decent machinist can make. But this is your motion to dismiss. It is. You are the one who chose to ask that the indictment be dismissed before there were any facts further than the facts you admitted to. Yes. Why couldn't, just hypothetically, why couldn't your client order a bunch of military grenade fuses? Thank you for asking that question. And that's exactly the answer I was getting to. Hypothetically. No, I'm very serious, Your Honor. It's not in the record one way or the other. No. Why would we assume he could not find fuses? Well, I'm going to describe a fuse to you, Your Honor. Because, first of all, Day and Zimmerman and a few of the fuse Is there a fuse in the record? Day and Zimmerman is, yes. Because they're one of the few grenade manufacturers in the country, Your Honor. Where in the record? I will have to point to it in my statement. It says it has a 28-J letter with that reference. What were you going to say about it? I was going to say that a fuse is actually a much more complex device. It isn't like a molotov cocktail where we throw a rag in it and light some gasoline. This is a very, it has a fuse body. It has a head, a stem, a central portion, a bore extending. It has heavy metal oxides in it that have to be put together very specifically. And those have, you have to have an explosives license to buy those and to put those together. And what's on point here is in my client's house, and this is part of the record, he gave five releases. They searched his house from stem to stem. They found nothing that would suggest there were fuse parts. And more importantly, unlike in a lot of other cases, you don't hear anything in the record that there was how to build bomb books, how to build this book, how to build that book. There is nothing like that in the record. Okay. And I will cancel. Yeah, thank you. Interesting case. Thank you both. Thank you.